UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| ANTHONY EUGENE BROOKS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:09-267-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| CITY OF PINE KNOT, ET AL. ) | **& ORDER** |
| ) | |
| Defendants. ) | |

\*\* \*\* \*\* \*\* \*\*

Anthony E. Brooks is in the custody of the Federal Bureau of Prisons ("BOP") and is incarcerated at the United States Penitentiary-McCreary, which is located in Pine Knot, Kentucky. Brooks has filed a prisoner *pro se* civil rights action in which he asserts claims against: (1) state and county officials under 42 U.S.C. § 1983, and (2) federal officials under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971).

The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).[1] Under 28 U.S.C. § 1915(e)(2), a district court has authority to dismiss a case at any time if the court determines the action is frivolous or malicious, or if it fails to state a claim upon which relief can be granted.

---

[1] This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).

Plaintiff Brooks challenges the conditions of his confinement at USP-McCreary. His claims fall under the Eighth Amendment to the United States Constitution. For the reasons set forth below, his claims will be dismissed for failure to fully and properly complete the applicable administrative exhaustion process.

**I.**

On August 3, 2009, Brooks filed a *pro se* prisoner civil rights complaint [Record No.1]. Brooks named the following defendants: (A) the City of Pine Knot, Kentucky; (B) the "City Attorney's Offices;" (C) the State of Kentucky; and (D) the Attorney General.[2] In his initial Complaint, Brooks complained that he was facing an unreasonable risk of danger at USP-McCreary by being housed in the same general area as other inmates who have or may contract the "swine flu"/H1N1 virus. Brooks demanded monetary damages in excess of $250,000.00, and he appeared to be seeking injunctive relief in the form of an Order separating inmates infected with the "swine flu" virus from other inmates.

On August 11, 2009, the Court entered a Deficiency Order regarding the $350.00 filing fee [Record No. 4], informing Brooks that he was required either to pay the filing fee or submit *in forma pauperis* documentation within thirty days. In a separate Order entered the same day, the Court asked Brooks to provide documentation regarding his efforts to administratively exhaust his claims [Record No. 3, p. 4]. Specifically, the Court asked Brooks to provide documentation that he pursued the emergency provisions of: (1) 28 C.F.R. § 542.18, which requires the Warden to respond to a grievance of an "emergency nature" within three days; and (2) 28 C.F.R. § 542.14(d)(1), which allows an inmate to by-pass the institutional levels and seek

---

[2] It is unclear whether Brooks is suing the Attorney General of the Commonwealth of Kentucky or the Attorney General of the United States of America.

relief from the BOP Regional Director "if the inmate reasonably believes that issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." [*Id*.].

On October 1, 2009, without seeking leave of Court as required by Federal Rule of Civil Procedure 15, Brooks filed an Amended Complaint ("the First Amended Complaint") [Record No. 20]. He elaborated on his claim that he has been exposed to the H1N1 virus while confined in USP-McCreary [Record No. 20]. Brooks stated: "There's no reason that the warden and these named defendants should have housed me 'Brooks' with the infected inmates, taking no regard for my life and others who weren't infected." [*Id*., p. 3]. Brooks stated that he suffers from severe anxiety and sleep disorders for which he takes medication, and he further explained that his various psychiatric conditions cause him to scratch his flesh from his neck and arm areas [*Id.*].

In the pre-printed form used as the First Amended Complaint, Brooks was asked to explain what, if any, efforts he had taken as a federal prisoner to administratively exhaust his claims within the Bureau of Prisons ("BOP") [Record No. 20, p. 4, § IV(A), ¶ 2]. Brooks's response was confusing. Brooks checked only the blank line to the left of the "File a Request or Appeal to the Warden" question, indicating that the only exhaustion step he took was filing a BP-9 "Request for Administrative Remedy" with the Warden.

To the right of each segment inquiring as to exhaustion efforts pursued at all three BOP levels (the institutional level, Regional Office, and Office of the General Counsel), however, Brooks provided specific dates on which he presumably filed a BP-9 "Request for Administrative Remedy" with the Warden (July 28, 2009); an appeal to the Regional Director (August 19,

2009); and an appeal to the Office of General Counsel (August 31, 2009, and September 15, 2009) [*Id*.].

Brooks then explained that he had filed some type of administrative remedy on July 28, 2009 [*Id*., p. 5, ¶ 4]. He claimed that someone scratched out that date and refused to answer his remedy for a month and two days. In the section of the First Amended Complaint inquiring as to exhaustion efforts undertaken by "County or City Prisoners," Brooks elaborated that his counselor, whom he identified as "Mr. Reusch," had crossed out his grievance date of July 28, 2009 and wrote "9-1-09." [*Id*., p. 6, § IV(C), ¶ (4)].

Brooks stated that as a result of filing that grievance, nothing happened and that "they keep sending it back claiming that I put to {sic} much on one form, the run around." [*Id.*, sub-para. (d)]. Brooks attached no documentation verifying that he filed administrative remedies on the specified dates (July 28, 2009, August 19, 2009, August 31, 2009, and September 15, 2009).

Then, on October 5, 2009, Brooks filed a Motion to Amend Amended Complaint ("the Second Amended Complaint") [Record No. 23]. In that Motion, Brooks specifically sought permission to add as defendants Warden Eric D. Wilson, in his official capacity, and "Mrs. Gregory," whom Brooks identified as being "the head of medical" at USP-McCreary.

## II.

### A.

Although Brooks's responses on the issue of administrative exhaustion are confusing and inconsistent, one thing is clear: prior to seeking judicial relief, Brooks did not, and could not, complete the BOP's administrative remedy process set forth in 28 C.F.R. § 542.13-15. For this reason, Brooks' § 1983 claims and/or construed Bivens claims against Warden Wilson and "Mrs. Gregory" are prematurely before the Court.

4

The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F. R. § 542.10-19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15

Brooks states that he delivered an administrative remedy to his counselor on July 28, 2009. Brooks apparently submitted his BP-8 "Informal Request for Resolution to Staff" to his counselor. A request for a formal resolution to the Warden would be in the form of BP-9 "Request for Administrative Remedy."

Brooks claims that his counselor changed the date on his administrative remedy and replaced it with the September 1, 2009 date. Assuming that Brooks did not receive a response to his BP-8 "Request for Informal Response" from his counselor, as he alleges, he was still required to have proceeded to the next step in the BOP's exhaustion process. If the inmate does not receive a response within the allotted time, including any extension, he may consider the absence of response as a denial at that level. 28 C.F.R. § 542.18. Absent a written denial of the BP-8, the next step would have been for Brooks to file a BP-9 "Request for Administrative Remedy" with the Warden.

Further, even if Brooks did file a remedy on July 28, 2009, and even if what he submitted on July 28, 2009, was a BP-9 "Request for Administrative Remedy" with Warden Wilson (a proposition which is not supported by Brooks's own statements), he could not have completed

5

the entire BOP administrative remedy process by the date on which he filed this action (August 3, 2009). Excluding the BP-8 "Request for Informal resolution from Staff," the three-step BOP administrative remedy process (BP-9 through BP-11 appeal) takes approximately ninety days to complete. Thus, completion of the process through the BOP's office of General Counsel could not have occurred much earlier than October 28, 2009. Brooks clearly short-circuited the BOP's administrative exhaustion process by filing this action on August 3, 2009.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other issue incident to prison life, to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. Nov. 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement). Since April 26, 1996, the PLRA, 42 U.S.C. §1997e(a), has read as follows:

> No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it. For any issue the plaintiff intends to raise in court, he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999).

In *Lyons v. United States Marshals*, 840 F.2d 202, 205 (3d Cir. 1988), the Third Circuit explained the benefits exhaustion yields:

> The exhaustion requirement promotes: (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.

Furthermore, exhaustion is not jurisdictional, but it is mandatory. *Wyatt v. Leonard*, 193 F.3d at 879. The Sixth Circuit has repeatedly underscored the underlying reasons for exhaustion, explaining that it is a statutory requirement and that "the importance of using the prison grievance process [is] to alert prison officials to problems." *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999); *see also Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Hartsfield v. Vidor*, 199 F.3d 305, 308-09 (6th Cir. 1999).

In order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted properly and within the time frames required by the remedy process. *Woodford v. Ngo*, 126 S. Ct. 2378, 2387-88 (2006). Brooks broadly alleges that the defendants gave him "the run around," and that "nothing" happened during the administrative exhaustion process. Nothing could have happened under the time-frame(s) that Brooks has provided, assuming that he began the administrative exhaustion process on July 28, 2009. He filed this action one week later, on August 3, 2009.

Additionally, Brooks alleges that he was or has been subjected to a life threatening condition by being exposed to other inmates who have the H1N1 virus. The Court instructed Brooks to provide documentary evidence of his compliance with the emergency provisions of 28 C.F.R. § 542.18, which allows a prisoner to seek emergency relief from the Warden [*See* Order, Record No. 3, p. 4, ¶(1)(B)]. Brooks has not provided the Court with any documentation

7

confirming that he pursued this avenue, alleging only in broad, confusing, and vague terms that he has done all that he is required to do.

It is clear from the face of Brooks's Amended Complaint [Record No. 20] that he could not have properly exhausted his claims through the BOP administrative channels. Even in light of the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910 (2007), district courts are still authorized to dismiss a complaint where failure to exhaust is apparent from the face of the complaint. *See, e.g., Winkelman v. John Doe*, 2007 WL 4139713, at *7-8 (E.D. Ky. 2007) (under *Jones*, complaint is subject to dismissal upon initial screening where it is apparent from complaint that inmate had failed to properly exhaust the prison grievance procedure); *Gunn v. Kentucky Depart. Of Corrections*, 2008 WL 2002259, at *4 (W.D. Ky. May 7, 2008) (Slip Copy) (where it was clear from face of the complaint that the prisoner-plaintiff had filed an untimely grievance, *sua sponte* dismissal of the complaint without prejudice was warranted); *Spaulding v. Oakland County Jail Medical Staff*, 2007 WL 2336216, at *3 (E. D. Mich. 2007) (dismissing complaint on initial screening for failure to exhaust because it was clear from the face of the complaint that the prisoner had not exhausted his administrative remedies prior to filing suit); *Funk v. Washburn*, 2007 WL 17473 84, at *1 (M.D. Fla. 2007) (Slip Op.) (not necessary for the Court to await the defendant's responsive pleading to raise the administrative exhaustion defense). Accordingly, the Court will dismiss this entire action without prejudice to Brooks properly exhausting his *Bivens* and/or § 1983 claims through the BOP administrative channels. The Court will deny as moot Brooks's "Motion to File Second Amended Complaint" [Record No. 23].

**B.**

Title 28 U.S.C. § 1915(g), which prevents "frequent filer" prisoners from obtaining pauper status when filing serial civil rights actions, provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Therefore, under this provision, any prisoner who has had three prior actions dismissed for any of the reasons set out above may not be granted permission to proceed without prepayment of fees. The only exception to this limitation is where the prisoner "is under imminent danger of serious physical injury."

The dismissal criteria set forth in subsection (g) apply to Brooks. According to the Public Access to Court Electronic Records ("PACER") website, Brooks is no stranger to the federal court system, having filed several civil rights actions since 2002. The five following civil actions have been dismissed as frivolous:

(1) *Anthony E. Brooks v. A. Catizone,* M.D. Pa. (Scranton), No. 3:06-CV-1542-WJN (dismissal for failure to assert constitutional claims, Docket No. 8, August 24, 2006);

(2) *Anthony Eugene Brooks v. United States of America*, E.D. Ca. (Fresno), 1:08-CV-168-AWI (dismissal for failure to state a claim and failure to obey Court Order, Docket No. 21, March 12, 2009);

(3) *Anthony E. Brooks v. City of Newport News, Virginia Police Dept. et al*., E.D. Va. (Norfolk), 2:08-CV-418-HCM (dismissal for failure to state a claim upon which relief could be granted and notice that the dismissal was the third in that court, Docket No. 2, June 15, 2009);

9

(4)  *Anthony E. Brooks v. City of Newport News*, *Virginia*, E.D. Va. (Norfolk), 2:09-CV-174- HCM (dismissal for failure to state a claim upon which relief could be granted, Docket No. 2, April 27, 2009); and

(5)  *Anthony E. Brooks v. City of Newport News*, *Virginia*, E.D. Va. (Norfolk), 2:09-V-269-HCM (dismissal for failure to state a claim upon which relief could be granted and notice that the dismissal was the third in that court, Docket No. 4, June 15, 2009).

The Court has granted Brooks *in forma pauperis* status in this proceeding [*See* Order, Record No. 10, September 15, 2009]. Based on the information from PACER, the Court is certainly authorized to set aside the Order granting pauper status, as Brooks has not three, but five strikes against him under § 1915(g). It is highly questionable whether Brooks has alleged a threat of "imminent physical injury" in his Complaint and Amended Complaint.[3]

As this action will be dismissed without prejudice because of Brooks's failure to exhaust his claims, the Court will not set aside the September 15, 2009 Order. Plaintiff Brooks will be allowed to maintain his pauper status for this proceeding. Brooks is on specific notice, however, that this Court is now aware of his "Three Strikes" status and will carefully scrutinize, under the parameters of 28 U.S.C. § 1915(g), any future civil rights action(s) which he may file here.

---

[3]   Other than alleging that he suffers from anxiety and sleep disorders, Brooks failed to allege how exactly he was impacted by the exposure. He does not allege that between August 3, 2009, and October 5, 2009 he actually contracted the H1N1 virus. He merely speculates that he might contract the virus. To the extent that Brooks claims that his mental condition was adversely affected, he states no claim. An inmate may not seek damages for emotional distress or mental suffering without showing a prior physical injury. 42 U.S.C. § 1997e(e). *See Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *and Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). No physical injury has been established here.

**III.**

Accordingly, and the Court being sufficiently advised, **IT IS ORDERED** as follows:

(1) Plaintiff Anthony E. Brooks's Complaint [Record No. 2] and his First Amended Complaint [Record No. 20] are **DISMISSED WITHOUT PREJUDICE**.

(2) Plaintiff Anthony E. Brooks's "Motion to Amend Complaint to File Second Amended Complaint" [Record No. 23] is **DENIED** as **MOOT**.

(3) This action is **STRICKEN** from the active docket of the Court.

(4) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This the 21st day of October, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge